|192  309|
|192  314|

# Assigned Estate of L. H. Taylor & Company.    Appeal of Samuel H. Austin, Jr.

*Contract—Gambling contract—Speculation in stock on margins—Stocks.*

A man may speculate by buying and selling upon expectation of the rise or fall in the market, and he is not thereby gambling. Whether he dealt for that purpose or for investments, and whether he held his purchases an hour, or a day, or a year, are wholly immaterial, except as evidence. The test is, whether he bought and sold, and not merely settled on differences, with no intention at any time of taking his purchases, or of delivering his sales. That and that only is gambling.

Where the books of a broker show that transactions were actual purchases and sales, and the customer testifies that, as to himself, they have the same character, and this testimony is not contradicted, but rather corroborated by other facts, it is error for an auditor to find that the transactions were of a gambling nature.

Argued March 27, 1899. Appeal, No. 19, Jan. T., 1899, by Samuel H. Austin, Jr., from order of C. P. No. 1, Phila. Co., Dec. T., 1895, No. 556, dismissing exceptions to auditor's report. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to auditor's report.

The auditor, Francis Shunk Brown, Esq., reported as follows :

A. A. Hirst, Esq., presented claim of S. H. Austin, Jr., for $5,830.40. This claimant had dealt with L. H. Taylor & Company for some time, but his account was closed in March, 1895. On October 17, 1895, he paid Taylor & Company $1,000 and ordered the purchase of 200 shares of American Tobacco Company common stock for $9,312.50. On October 31 he purchased 100 shares of Electric Storage Company stock, selling same on that day at an advance of over $400. On November 7 and 11 he purchased in three lots a total of 600 shares of American Tobacco Company common stock, costing about $26,000. On the latter date the Electric Storage Company stock was ordered sold, and $3,000 cash was paid on account. On November 14, two lots of 200 shares each of American Tobacco Company common stock were sold for a total of $18,037.50. On November 18, 19 and 20,

1895, the claimant ordered the purchase of three lots of 200 shares each of American Tobacco Company common stock, and paid $3,000 additional on account. On November 26, 100 shares of American Sugar Refining Company common stock and 200 shares of American Tobacco Company common stock, and on November 27, 100 shares of the latter stock were ordered purchased, making Mr. Austin's debit balance $65,328.67. On November 29, 200 shares of American Tobacco Company common stock and 100 shares American Sugar Refining Company common stock were ordered sold. On December 20, 1895, claimant's account is in debit $39,457.10 as against which L. H. Taylor & Company held 1,000 shares of American Tobacco Company common stock and 100 shares of American Tobacco Company preferred stock. This account shows seven or eight completed transactions.

After a most careful consideration of all the evidence in this case, having regard to the presumption of regularity, I am obliged to find, from the number and character of the transactions, that this claimant merely intended to gamble upon the rise and fall of the market, and I therefore disallow his claim.

On exceptions the auditor reported as follows:

It was strongly urged, on the argument of these exceptions, that I erred in ignoring the claimant's testimony that he bought the stocks as a "permanent investment," and that he was a man of large means. The claimant's testimony as to what he intended to do, however, is strangely at variance with the admitted facts. From October 17, 1895, to the time of the failure, he bought and sold seven or eight lots of stock. His sales would often follow two or three days after his purchases. I am at liberty under the decisions to go beneath the surface and find the real character of the transactions, and it is a stretch of language to say that a man who buys stocks and habitually sells the same a day or so thereafter, is purchasing for "investment." At the urgent request of counsel, I heard additional testimony at the time of the argument of the exceptions, to the effect that Mr. Austin was worth $1,000,000, and that he had stated prior to the assignment that he was buying this stock for investment. I find that the claimant was a man of wealth. I am unable to see, however, how his statements as to his intentions are legal evidence. The fact remains that instead of hav-

ing any stock delivered to him he repeatedly bought and sold, taking the profits thereof. I overrule the exceptions.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Henry J. Scott*, with him *Anthony A. Hirst*, for appellant.— The law of Pennsylvania is well settled that a purchase of stock is not necessarily a gambling transaction; if there is in good faith a purchase, the delivery may be postponed, or made to depend on a future condition, and the stock may be carried on margin in the mean while, without affecting the legality of the operation: Peters v. Grim, 149 Pa. 163.

Where the party tells a credible story and is uncontradicted, that story must be believed by the jury, and as the auditor in this case took the place of the jury he could not go outside of the evidence submitted, and find against the claim as presented: Machette v. Lessig, 9 Phila. 132; Donath v. Ohle, 7 Phila. 240; Andritz v. Wolf, 7 Phila. 106; Levy v. Ins. Co., 5 Clark, 284; Express Co. v. Wile, 64 Pa. 201.

*Richard C. Dale*, with him *C. Berkley Taylor*, for appellee, cited Chipman & Holt v. Ninth Nat. Bank, 120 Pa. 86; Peters v. Grim, 149 Pa. 163.

OPINION BY MR. JUSTICE MITCHELL, July 19, 1899:

This is another appeal in the matter of the assigned estate of L. H. Taylor & Company, brokers, which was considered in Howard's Appeal, ante, p. 304. The law was sufficiently discussed in that case.

At the time of the assignment Taylor & Company held certain shares of stock which had been bought on appellant's order, partly paid for by him, but not yet delivered. They were not forthcoming on demand but were credited on his account, and he presented a claim for the balance that appeared to be due him.

The auditor found that "as far as Taylor & Company were concerned the transactions were not fictitious, but were actual purchases and sales of stock." He however found "from the number and character of the transactions, that this claimant

merely intended to gamble upon the rise and fall of the market."
And on the argument of exceptions, the claimant having testified that he bought the stocks as an investment, the auditor said : " The claimant's testimony as to what he intended to do, however, is strangely at variance with the admitted facts. From October 17, 1895, to the time of the failure, he bought and sold seven or eight lots of stock. His sales would often follow two or three days after his purchases. I am at liberty, under the decisions, to go beneath the surface and find the real character of the transactions, and it is a stretch of language to say that a man who buys stocks and habitually sells the same a day or so thereafter is purchasing for investment." He therefore disallowed the claim. These two extracts from his report show that the learned auditor proceeded on the popular and not on the legal view of dealing in stocks, and entirely failed to apply the settled legal distinction between " gambling " and legitimate dealing. A man may speculate by buying and selling upon expectation of the rise or fall of the market and he is not thereby gambling. Whether he dealt for that purpose or for investment, and whether he held his purchases an hour, or a day, or a year, are wholly immaterial except as evidence. The test is whether he bought and sold, and not merely settled on differences with no intention at any time of taking his purchases or delivering his sales. That and that only is gambling. As already said, the auditor found that as to Taylor & Company the transactions were actual purchases and sales. The appellant testified that as to himself they had the same character, and this testimony was corroborated and in no way contradicted except by the auditor's inference " from the number and character of the transactions." This conclusion was not warranted by anything in the evidence.

The judgment so far as it relates to this appellant's claim is reversed and the claim directed to be allowed.